### City of Centralia, Illinois, Appellant, v. D. W. Norton & Co., et al., Appellees.

The decision in this case is except as to the ensuing point controlled by the decision in the preceding case, *ante*, p. 46.

1. APPEALS AND ERRORS—*when cross-errors cannot be assigned.* Cross-errors cannot properly be assigned upon the record filed upon an appeal taken by parties who are unaffected by the matters to which the cross-errors refer.

Bill in chancery. Appeal from the Circuit Court of Marion county; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the August term, 1907. Affirmed. Opinion filed March 18, 1908.

WILLIAM G. MURPHY, and J. J. BUNDY, for appellant.

FRANK F. NOLEMAN, for appellee; HOWARD GARRISON and I. B. LIPSON, of counsel.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

On June 30, 1904, appellant, the City of Centralia, entered into a contract with D. W. Norton & Co., a firm of sewer contractors, for constructing a system of sewers in said city, the price named in the contract to be paid to said contractors being $36,315.05, but it appears that certain changes were made effecting a

City of Centralia v. Norton & Co.

slight reduction so that the net price was $35,938.11
The city took from Norton & Company a bond in the
sum of $18,158, with the National Surety Company
as surety thereon, the conditions of which were that
said Norton & Company should well and truly build,
construct and complete said sewer system, according
to said agreement and indemnify and save harmless
the Board of Local Improvements and the city of Cen-
tralia, Illinios, of and from all mechanics' liens of any
kind for work done or material furnished in and about
the construction of said system.   On February 22,
1905, Norton & Company who had undertaken the con-
struction of said work and to a large extent completed
it, became involved financially and abandoned it. Soon
afterwards they filed a petition in bankruptcy and
were adjudged bankrupts.   The referee in bankruptcy
refused to take up the contract and complete it, so the
city authorities, after some investigation as to the
probable cost of completing the work, proceeded to
complete the same by day labor.   Previous to taking
up said work, however, the city compromised with the
National Surety Co. for its liability upon the above
bond and another given the city upon a different
sewer contract, for the sum of $3,000, $2,000 of which
was applied and apportioned by the city to assist in
the completion of this contract.   Soon after Norton
& Company abandoned the work and before the city
compromised its claim with the surety company or
undertook to complete the work by day labor, certain
creditors of Norton & Company, who are appellees
here, served notice of claims upon the city under the
mechanics' lien law.   The unpaid claims due to all of
the other appellees against Norton & Company except
the Old National Bank and the Merchants' State
Bank, were for labor and material furnished Norton
& Company for said work. A portion of this mate-
rial had not been used at the time work was stopped
and was subsequently appropriated by the city and
used in the completion of said sewer system.   The

amount due from the city on its contract with Norton
& Company at the time of the suspension of work by
the company was $9,404.77. The amount required to
complete the work as it was done by the city was
$4,251.95. The city deducted from the amount ex-
pended by it the $2,000 received from the Surety Com-
pany and proposed to charge the balance of $2,251.95
against the amount in its hands, due on the con-
tract. The amount due from Norton & Company to
the appellees, except the two banks, for labor and serv-
ices, was $10,764.13. The city was to pay to Norton
& Company the amount provided for by the contract
in special assessment bonds. During the prosecution
of the work by Norton & Company $7,000 of the bonds
provided for by the contract with the city and issued
thereunder, had been purchased by the Old National
Bank and $5,000 by the Merchants' State Bank. In
October, 1904, two opinions were handed down by the
Supreme Court of this state in cases involving another
municipality and relative to the act under which the
city of Centralia was building its system of sewers,
which were considered to affect adversely the validity
of said improvement bonds. By reason thereof Nor-
ton & Company were unable to sell any more of their
bonds or raise more funds to continue the work. To
avoid the abandonment of the work at that time Nor-
ton & Company applied to said banks for an advance
of money to carry on and complete the same. Up to
this time no notices had been served upon the city, or
any of its officials by any of the appellees or any one
else, claiming a lien upon said fund. An arrangement
was thereupon made by which Norton & Company
gave an order on the president of the Board of Local
Improvements to turn over to the Old National Bank
$4,000 in sewer bonds, as they should become due on
the work, and this order was immediately filed with
the mayor who gave a receipt for the same. Norton
& Company also executed to said bank, notes to the
amount of $3,150, and they were given credit by the

bank for that amount and drew checks upon it from time to time to satisfy their pay rolls. Norton & Company also had an over-draft which with the notes above mentioned, made the total amount of $3,634.41 due from them to the Old National Bank, for which it held an order on the mayor for sewer bonds to the amount of $4,000. Under a similar arrangement the Merchants' State Bank advanced money and took orders on the mayor for bonds, one of which was for $5,500 and the other for $4,500. Certain bonds were delivered to the Merchants' State Bank under its orders upon the mayor, but when Norton & Company suspended work there was still due to it $1,150, secured by an order on the mayor for bonds to the amount of $4,500. On March 6, 1905, the Old National Bank served a notice on the mayor of its claim, the purpose for which it paid out the money, and requesting him to withhold a sufficient amount of said bonds to pay its claims and on March 25, 1905, the Merchants' State Bank served a like notice on the mayor in reference to the amount of its debt and the bonds it had an order for. Notices of liens under the Mechanics' Lien Law were served by the appellees other than the banks upon the city at various times, from February 25 to March 31, 1905.

After the work was completed the city filed its bill of interpleader against appellees, stating there was due to Norton & Company under the contract, the sum of $7,152.82; that appellees claimed liens upon this amount and it feared there was not sufficient amount coming to the contractor to pay all of said liens. It stated that it was willing and asked to be permitted to bring into court special assessment improvement bonds to the amount of $7,152.82 and that said appellees be required to settle and adjust the amounts of their claims among themselves.

The only question of dispute so far as appellant was concerned upon the hearing was, whether it was entitled to deduct from the total amount due on the con-

tract when Norton & Company suspended work, the
sum of $2,251.95, paid by it out of its general fund in
addition to the $2,000 received from the Surety Co.,
or whether it must bring into court the whole
amount of $9,404.77. The court decreed that appellant
was not entitled to the credit claimed by it, but must
account for the whole amount due on the contract when
the work was suspended by the contractors. It also
decreed that the Old National Bank was entitled to be
subrogated to the rights of the other lien holders to
the amount of $3,634.41 and was entitled to its *pro
rata* share of the funds, pledged to it and held by the
mayor; and that the Merchants' State Bank was en-
titled to be subrogated to the rights of the other lien
holders to the amount of $1,150 and was entitled to
have its *pro rata* share of said funds pledged to it and
held by the mayor.

The city alone appealed from the decree of the
court below and while the other lien holders contested
the right of the two banks to participate in the fund
held by the city, they did not appeal, but certain of
them filed cross errors.

This case so far as the right of appellant is con-
cerned is similar to another case also entitled, City of
Centralia v. D. W. Norton & Co. et al., *ante*, p. 46, in
which an opinion is filed in this court at this term.
The two cases grew out of contracts entered into by
Norton & Company with said city of Centralia, for the
construction of a general system of sewers, but this
case involves what was known as the service sewer,
while the other case related to what was known as the
outlet sewer, otherwise, so far as the rights of ap-
pellant are effected, the two cases are identical, except
as to the names of the parties claiming the fund and
the amounts involved. It is true that while there
was no question as to the amounts due the re-
spective claimants, there was a contention between
the banks on the one side and the other claim-
ants on the other, as to whether the banks should

be permitted to participate in the fund, and had the amount due from appellant been undisputed, it could well have insisted that the claimants contest their rights at their own expense. Appellant however by its bill asked positive relief, insisting that it be given a credit of $2,152.95 for money paid out of its general fund in completing the sewer, upon the total amount of $9,404.77 due upon the contract at the time of the suspension of work by the contractors, and its only objection to the decree of the court below is that it was not allowed credit for said amount.

As appellant failed to advertise for bids in completing the sewer in question, but did the work by day labor and for the further reason that it compromised the bond of the National Surety Company which had been given to secure it in just such an emergency, for a much smaller amount than was sufficient to save it and far within the penalty of the bond, we are of opinion appellant was not entitled to the relief prayed for and that such relief was properly refused by the court below. It was immaterial so far as appellant's claim of credit was concerned whether the claims of the two banks stood upon the same footing as those of the claims of the other appellees for material and labor or not, for the reason that even if the claims had been wholly disallowed, the claims of the other appellees were more than sufficient in amount to cover the total amount of bonds due upon the contract at the time of the suspension of work by the contractors. Our views upon this subject are more fully set forth in the opinion this day filed in the other case of the City of Centralia v. D. W. Norton & Company et al., above referred to. (*Ante*, p. 46.)

The two banks interested in this case filed a motion to strike the cross-errors filed by certain of the other appellees, from the files. These cross-errors relate entirely to the right of the two banks to participate in the fund held by the city and the decree of the court permitting such participation. The appeal taken by

the City of Centralia, the appellant in this case, did not seek to review that question at all but related wholly to the question whether appellant should receive the credit it asked upon the fund, held by it. The two parts of the decree were wholly distinct, one relating solely to appellant's claim of credit and the other to the right of distribution between the parties. They are in effect as distinct as though they had been involved in two different suits. We are of opinion that had the appellees who filed the cross-errors, desired to question the decree of the court in reference to the claim of the two banks they should have prayed for and effected an appeal or taken such steps that they could have afterwards sued out a writ of error, but that they cannot prosecute an appeal by filing cross errors where the appeal is taken by a party who is not affected by the matters with which the cross errors are concerned.

The rule is well settled in this state that where different parts of a decree relate to matters wholly independent of each other, so that the decision of one part has no influence or bearing upon the decision as to the other part, they are severable and in effect distinct decrees and for that reason it has been held that an appeal may be made from either part without affecting the decision made as to the other part. Walker v. Pritchard, 121 Ill. 221; Union Trust Co. v. Trumbull, 137 Ill. 140.

It appears therefore that the cross-errors of said claimants might properly be dismissed. We have however considered the other questions raised by the cross-errors and are of opinion that the banks in question had legal and equitable rights to the funds in the hands of the city which were established prior to the time the other appellees gave notice of their liens, and that the decree of the court sustaining the right of said banks to participate in said fund, was proper.

We find no substantial error in the decree of the court below and it is accordingly affirmed.

*Affirmed.*